**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **LANDRY'S RESTAURANTS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **No. G-07-406** |
| **POST ADVISORY GROUP, LLC;** | § | |
| **LORD ABBETT BOND-DEBENTURE** | § | |
| **FUND, INC.; and U.S. BANK** | § | |
| **NATIONAL ASSOCIATION,** | § | |
| **solely in its capacity as Indenture Trustee** | § | |
| **on behalf of all Holders of Landry's** | § | |
| **Restaurants, Inc.'s 7.50% Senior Notes** | § | |
| **Due 2014,** | § | |
| | § | |
| **Defendants.** | § | |

## LANDRY'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE KENT:

Plaintiff, Landry's Restaurants, Inc. ("Landry's"), respectfully files this Motion for Summary Judgment on its declaratory judgment claim.

### SUMMARY OF MOTION

This action arises from an opportunistic attempt by certain funds, acting through U.S. Bank National Association ("U.S. Bank" or "the Trustee"), to distort the plain language of a 2004 Indenture (the "Indenture") in an attempt to manufacture grounds for a technical default that would allow them to reap an extraordinary windfall at the expense of Landry's, its shareholders, and the investing public.

Landry's executed the Indenture to complete an offering of $400 million in Senior Notes (the "Notes") due in 2014. (Ex. 1.) Under the Indenture, Landry's is required to furnish financial information to the Trustee within the time periods specified by the rules and regulations

of the Securities and Exchange Commission ("SEC"). On March 16, 2007, Landry's properly filed a notice under SEC Rule 12b-25, which provides a 15-day grace period for filers who otherwise could not file a Form 10-K without unreasonable effort or expense. (Ex. 2.)

On March 20, 2007—just four days after Landry's filed the notice required by Rule 12b-25—the Trustee issued a Notice of Default. (Ex. 3.) The Trustee did so despite the fact that the 15-day grace period provided by Rule 12b-25 had not expired, and despite the fact that Landry's had never missed a payment or committed any breach of the Indenture. The Trustee subsequently issued a Notice of Acceleration, purporting to require the immediate payment of the Notes—$400 million of aggregate capital, plus interest. (Ex. 4.)

The Trustee's actions are part of an apparent scheme designed to extort a large "forbearance fee" and then coerce substantial economic concessions from Landry's so that certain funds can substantially improve on the bargained terms of the Notes, or sell their Notes at a significant profit in the open market. In this motion, Landry's asks the Court to put a stop to this scheme. Landry's is entitled to summary judgment because the Trustee now admits that it lacked the authority it claimed for accelerating the Notes. Moreover, the Trustee purported to accelerate on the basis of a "March 19, 2007 . . . written notice" that its now admits does not exist. Finally, the Trustee could not have accelerated the Notes on the basis of the March 20, 2007 Notice of Default, because that notice was sent when Landry's was not in default, failed to comply with the notice requirements set forth in the Indenture, and therefore was not legally valid. For all of these reasons, the Court should grant summary judgment for Landry's.

## GROUNDS FOR SUMMARY JUDGMENT

1.     The Trustee's Notice of Acceleration is defective and invalid, because the Trustee lacked the authority it claimed for accelerating the Notes.

2.      The Trustee's Notice of Acceleration is also defective and invalid because the Trustee purported to accelerate on the basis of a "March 19, 2007 . . . written notice" that does not exist.

3.      The Trustee did not purport to accelerate the Notes on the basis of the March 20, 2007 Notice of Default, and it could not have done so because Landry's was not in default on March 20, 2007.

4.      The Trustee also could not have accelerated on the basis of the March 20, 2007 Notice of Default because that notice failed to comply with the notice requirements set forth in the Indenture.

5.      Landry's filing of its Form 10-K precludes any finding of a continuing "Event of Default" under the Indenture, which in turn precludes acceleration.

## UNDISPUTED FACTS

### I.      The Indenture.

On December 28, 2004, Landry's entered into an Indenture by which it completed an offering of $400 million in 7.50% Senior Notes.  (Ex. 1.)  The holders of the Notes are represented by the Trustee, U.S. Bank (which is the successor to the original Trustee, Wachovia Bank).  (Ex. 5 at 12.)

### II.      The Rule 12b-25 notice.

For 14 years, Landry's consistently and timely filed its Forms 10-K and 10-Q with the SEC.  In 2006, however, Landry's—like hundreds of other companies that had awarded stock options to their officers and employees as a form of compensation—voluntarily undertook an internal review of its stock option granting process.  (Ex. 6 at 45-46, 87, 89.)

The initial review was conducted using Landry's long-time outside counsel.  (Ex. 6 at 89.)  After the review was completed, Landry's conferred with its independent auditors to

confirm that the review would be sufficient for the auditors.  (Ex. 6 at 90-92.)  Those discussions

between Landry's and its auditors began in early March 2007 and were not concluded until late

March, when Landry's auditors for the first time told Landry's that a *de novo* review conducted

by outside counsel which had not performed prior services for Landry's would be required.  (Ex.

6 at 96.)[1]

Because the sufficiency of the review for purposes of Landry's Form 10-K for 2006

remained under discussion in mid-March, Landry's was unable to file its Form 10-K for 2006 by

March 16, 2007.  (Ex. 6 at 90-91; Ex. 2.)  However, Landry's anticipated filing its Form 10-K

within a matter of days, as its auditors had not yet required the undertaking of a *de novo* review

and Landry's believed the completed review was sufficient.  (Ex. 6 at 107-09.)  Therefore, on

March 16, 2007 Landry's filed a notice under SEC Rule 12b-25, which provides that a Form

10-K "shall be deemed filed on the prescribed due date" if the registrant's Form 12b-25

describes the causes for being unable to file timely and the reasons why such causes could not be

eliminated without unreasonable expense or effort to the registrant, and the Form 10-K is filed

"no later than the fifteenth calendar day following the prescribed due date."   17 C.F.R.

§ 240.12b-25(b)(2)(ii).[2]

## III.    The Notice of Default.

Even though Landry's had filed the notice required by Rule 12b-25, the Trustee issued a

Notice of Default just four days later, on March 20, 2007.  (Ex. 3.)  The Trustee did so despite

---

[1]  The voluntary review did not find any intentional backdating of options. The review found
administrative errors and that the granting process for certain stock option grants had not been complete,
resulting in incorrect measurement dates for certain stock option awards.  In addition, the review found
certain accounting errors which needed to be corrected.  The *de novo* review made substantially the same
findings.  On August 3, 2007, the SEC informed Landry's that it would not be recommending any action.
(Ex. 7.)

[2]  Throughout 2007, Landry's complied with the SEC's rules and regulations by issuing periodic 8-Ks
containing financial and operational information.  (Ex. 8.)

the fact that the 15-day grace period provided by the SEC's rules and regulations as set forth in Rule 12b-25 had not expired, and despite the fact that Landry's had never missed a payment or committed any breach of the Indenture.

The Notice of Default asserted that Landry's had failed to comply with Section 4.02 of the Indenture by failing to provide certain financial information to the Trustee.  (Ex. 3.)  Section 4.02, however, provides that Landry's shall furnish the information to the Trustee at any time "within the time periods specified in the [Securities and Exchange] Commission's rules and regulations."  (Ex. 1, § 4.02.)  Specifically, Section 4.02(a) provides:

> (a)    Whether or not required by the Commission . . . the Company shall furnish to the Trustee, ***within the time periods specified in the [Securities and Exchange] Commission's rules and regulations:***
>
> (1)    all quarterly and annual financial information that would be required to be contained in a filing with the Commission on Forms 10-Q and 10-K if the Company were required to file such Forms . . . ; and
>
> (2)    all current reports that would be required to be filed with the Commission on Form 8-K if the Company were required to file such reports.

(Ex. 1, § 4.02(a) (emphasis added).)  Section 4.02(c) further provides that this requirement is "for informational purposes only":

> Delivery of such reports, information, and documents to the Trustee pursuant to this Section 4.02 is for informational purposes only . . . .

(Ex. 1, § 4.02(c).)[3]  Nothing in the Indenture prohibits Landry's from filing a notice under Rule 12b-25.  (Ex. 1, § 4.02.)

---

[3]  These documents were of no substantial import even to the alleged members of the "Ad Hoc Committee" that apparently urged the Trustee to declare a default.  This is evident from the fact that the leaders of the alleged "Ad Hoc Committee" continued to significantly increase their bond holdings, on

Although the Indenture required the Trustee to send all notices to Landry's to the attention of Steven L. Scheinthal—Landry's Executive Vice President, General Counsel, and Secretary—the Trustee has admitted that it did not send the Notice of Default to Mr. Scheinthal. (Ex. 1, § 13.02; Ex. 5 at 22, 87-88.)

**IV.     The Notice of Acceleration.**

On March 23, 2007, Landry's counsel informed the Trustee that the Notice of Default was premature and defective because Landry's had filed a notice under Rule 12b-25.  (Ex. 9) The Trustee did not take any action to correct its mistake.  Instead, the Trustee issued a Notice of Acceleration on July 24, 2007.  (Ex. 4.)  In the Notice of Acceleration, the Trustee purported to require the immediate accelerated repayment of the $400 million of aggregate principal, plus interest.  (Ex. 4.)

In the Notice of Acceleration, the Trustee claimed to be "acting upon a direction of a majority of Note Holders," but it has now admitted that in reality, there was only one "Holder," and that "Holder" did not direct the Trustee to accelerate the Notes.  (Ex. 4; Ex. 5 at 45-47.) Moreover, the Trustee's Notice of Acceleration was expressly based on a purported "March 19, 2007 . . . written notice," but the Trustee has now admitted that no such notice exists.  (Ex. 4; Ex. 5 at 42.)

**V.     This action.**

On July 31, 2007, seven days after the Trustee issued the Notice of Acceleration, counsel representing a purported "Ad Hoc Committee of Bondholders" demanded that Landry's pay a "forbearance fee" of $4 million by August 3, 2007 "[a]s a precondition of our negotiating."  (Ex. 12.)   According to the demand, this payment would buy Landry's a mere seven days during

---

behalf of those to whom they owe a fiduciary duty, even after Landry's publicly announced that it had received a notice of default, and increased their bond holdings even further after the Notes were purportedly accelerated.  (Ex. 10 at 47, 51-52, 64, 68, 155-56, Ex. 11 at 29-30, 45-46.)

which the purported "Ad Hoc Committee of Bondholders" would refrain from taking further action with respect to the Notes.  (Ex. 12.)  The purported "Ad Hoc Committee" also demanded that Landry's pay an additional "forbearance fee" of $1 million per week through August 31, 2007.  (Ex. 12.)  In addition, the purported "Ad Hoc Committee" demanded that Landry's pay a $65,000 "retainer fee" to their counsel, restructure the Notes to provide for a $10 million "consent fee," increase the coupon rate to provide for additional interest of $14 million per year, and agree to restrictions that would require Landry's to forgo pursuing its business plans and model, among other things.  (Ex. 12.)[4]

On August 1, 2007, Landry's filed this action and requested a temporary restraining order ("TRO") to prevent the Trustee's unlawful acceleration.  (Doc. # 1.)  The Court issued a TRO ordering the Trustee to withdraw the Notice of Acceleration, notify all known noteholders that the Notice of Acceleration was withdrawn, and refrain from taking any action predicated on the purported acceleration of the Notes.  (Doc. # 6.)

**VI.     The filing of the Form 10-K.**

Due to the complexity and volume of data related to the *de novo* stock option review, Landry's was unable to file its Form 10-K until August 10, 2007.  (Ex. 13.)  On August 13 and 14, 2007, Landry's also filed its Forms 10-Q for the quarters ending March 31, 2007 and June 30, 2007.  (Ex. 14.)  Thus, Landry's is fully compliant with its obligations under the Indenture.

---

[4] These demands were made in the guise of a "settlement" communication in an attempt to shield them from view.  However, the communication is admissible under Federal Rule of Evidence 408 because it involved no compromise, but was merely a threat of liability.  *See Winchester Packaging, Inc. v. Mobil Chem. Co.*, 14 F.3d 316, 319 (7th Cir. 1994).

## ARGUMENT AND AUTHORITIES

Landry's is entitled to summary judgment for several reasons.

- First, the Trustee purported to accelerate the Notes "upon a direction of a majority of Note Holders," but it now admits that it lacked the authority it claimed for accelerating the Notes.

- Second, the Trustee purported to accelerate on the basis of a "March 19, 2007 . . . written notice," but it has now admitted that no such notice exists.

- Third, the Trustee could not have accelerated the Notes on the basis of the March 20, 2007 Notice of Default, because that notice was sent at a time when Landry's was not in default, and because that notice failed to comply with the notice requirements set forth in the Indenture.

For all of these reasons (and the other reasons discussed below), the Court should grant summary judgment for Landry's. *See* FED. R. CIV. P. 56(c).[5]

## I.     The Trustee is not entitled to accelerate the Notes, because it failed to strictly comply with the notice requirements set forth in the Indenture.

Mindful of the draconian effect that an acceleration of hundreds of millions of dollars of debt can have on a publicly traded company and the attendant loss of value to shareholders, courts prohibit acceleration unless the noteholder has strictly complied with each and every condition precedent to acceleration.

---

[5] Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986).   The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] that it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S. Ct. at 2553.   The non-moving party must come forward with evidence "showing there is a genuine issue for trial." FED. R. CIV. P. 56(e), *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).   The court must view all evidence in the light most favorable to the non-movant. *See, e.g., Broussard v. Parish of Orleans,* 318 F.3d 644, 650 (5th Cir. 2003), *cert. denied,* 539 U.S. 915, 123 S. Ct. 2276, 156 L. Ed. 2d 130 (2003).   If a contract is unambiguous, summary judgment on the contract is appropriate.   *Faulkner v. Nat'l Geographic Soc'y,* 452 F. Supp. 2d 369, 375 (S.D. N.Y. 2006); *see W.W.W. Assoc., Inc. v. Giancontieri,* 566 N.E.2d 639, 642 (N.Y. 1990); *Wards Co. v. Stamford Ridgway Assocs.,* 761 F.2d 117, 120 (2d Cir. 1985).

The Indenture at issue in this case is governed by New York law.  (Ex. 1, § 13.09.)
Under New York law, notice requirements are strictly applied:

> [T]he notice requirement is not merely some vestigial ceremonial remain, which evolved from medieval England to add luster to our legal system.  It has a vital purpose.  The acceleration clause of a promissory note is not unlike the sword of Damocles hanging over a borrower's head as a constant threat to at least financial imposition if not economic ruin.  ***The declaration of a default which prompts acceleration is therefore a drastic act.***  Thus, before the sword falls, it is the purpose of the default notice to give the borrower one final chance to avoid default and the harsh effect of acceleration.  It is an act of charity and fairness agreed upon by the parties.  It therefore ***must be strictly construed*** for "stability of contract obligations must not be undermined by judicial sympathy."

*Dale v. Indus. Ceramics, Inc.*, 571 N.Y.S.2d 185, 186 (N.Y. Sup. Ct. 1991) (quoting *Graf v. Hope Bldg. Corp.*, 171 N.E. 884, 885 (N.Y. 1930)) (emphasis added).

In accordance with this policy, courts applying New York law consistently have held that when a notice fails to strictly comply with the applicable notice requirements, it has no effect. *See, e.g., SVS, Inc. v. Rabbit Ears Productions, Inc*., No. 91 Civ. 6632 (CSH), 1992 WL 91183, *11 (S.D.N.Y. Dec. 12, 1991) (even though both parties had agreed on the unpaid amount, the notice of default was invalid because it did not state the unpaid amount); *Almeida v. Hernandez*, 804 N.Y.S.2d 648, 651 (N.Y. Sup. Ct. 2005) (because the notice of default was only partly in Spanish, it failed to comply with a consent judgment that required the notice of default to be in both English and Spanish, and therefore was void).  Strict compliance is particularly important where, as here, the notice requirements are determined by agreement rather than created by statute. *See In re St. Casimir Dev. Corp.*, 358 B.R. 24, 40 (S.D.N.Y. 2007); *Dale*, 571 N.Y.S.2d at 186.

As discussed below, the Trustee failed to comply with the Indenture's notice requirements in several fundamental respects—each of which precludes acceleration of the Notes.

**II.     The Notice of Acceleration is defective and invalid, because the Trustee lacked the authority it claimed for accelerating the Notes.**

The Notice of Acceleration in this case is invalid for several reasons, not the least of which is that the Trustee lacked the authority it claimed for accelerating payment of the Notes. In the Notice of Acceleration, the Trustee claimed to be "acting upon a direction of a majority of Note Holders":

> The Indenture Trustee, ***acting upon a direction of a majority of Note Holders given pursuant to Section 6.05 of the Indenture,*** hereby declares the unpaid principal of, premium, if any, and accrued and unpaid interest on, all the Notes outstanding to be due and payable immediately, all pursuant to Section 6.02 of the Indenture.

(Ex. 4 (emphasis added).)

Despite its representation in the Notice of Default, the Trustee has admitted that it did not, in reality, issue the Notice of Default at the direction of "a majority of Note Holders."  (Ex. 5 at 45-47.)  The Trustee has admitted that there was only one "Holder," and that the sole "Holder" did not direct the Trustee to accelerate the Notes.  (Ex. 5 at 45-47.)

**A.     The sole "Holder" of the Notes is DTC, whose nominee is Cede & Co.**

In the Indenture, the "Holder" of the Notes is a defined term, meaning "a Person in whose name a Note is registered on the Registrar's books."  (Ex. 1, § 1.01.)  In this case, the Notes are registered on the Registrar's books in the name of a single "Holder": the Depository Trust Company ("DTC"), whose nominee is Cede & Co.  (Ex. 5 at 14-15.)  The Trustee's default account manager and its designated representative, Diana Jacobs, admitted this fact during her deposition.  (Ex. 5 at 6-7, 14-15.)  Ms. Jacobs testified as follows:

> Q.    Ms. Jacobs, if you would, take a look back at 6.05. . . . "Holder" is CEDE & Company, isn't it? . . .   It's a capitalized term in the indenture, isn't it, Ms. Jacobs?
>
> A.    Yes.
>
> Q.    Capitalized terms in the indenture are defined in the indenture, aren't they?
>
> A.    Yes.
>
> Q.    And "holder," when used in 6.05, refers back to the definition of "holder" that we referred to earlier, doesn't it; isn't that correct? . . .   Am I correct, Ms. Jacobs?
>
> A.    Yes.
>
> Q.    **And the holder, under the indenture,** as you — as U.S. Bank knows, because it's the registrar, **is CEDE & Company, correct?**
>
> A.    **Correct.**

(Ex. 5 at 46-47 (emphasis added); *see also* Ex. 5 at 14-15.)[6]

**B.    The sole "Holder" did not direct the Trustee to accelerate.**

The Trustee further admitted that it did not issue the Notice of Acceleration at the direction of Cede & Co., the sole "Holder":

> Q.    U.S. Bank was not directed by the holder, was it?
>
> A.    If you're referring to the holder as CEDE & Co., no.
>
> Q.    **U.S. Bank was not directed to issue the notice of acceleration by the holder as that term is defined in the indenture, correct?**
>
> A.    **Correct.**

---

[6] Counsel for the Trustee made objections to form during this exchange.  Those objections are without merit and have been omitted here.  (Ex. 5 at 46-47.)

(Ex. 5 at 45 (emphasis added).)   Thus, although the Trustee represented in the Notice of Acceleration that it was "acting upon a direction of a majority of Note Holders," it has now admitted that this representation was false.

### C.   The Trustee improperly accelerated at the behest of entities that are not "Holders."

Without any direction from the sole "Holder" to accelerate the Notes, the Trustee instead acted at the behest of entities that it calls the "beneficial holders" of the Notes—"the people who trade the Notes and so forth."  (Ex. 5 at 14, 45.)  Ms. Jacobs testified:

> Q.    Now, in the situation we're here today with regard to Landry's, ***U.S. Bank was directed by a group of beneficial holders, correct?***
>
> A.    ***Correct.***

(Ex. 5 at 47 (emphasis added).)

The so-called "beneficial holders" are not authorized to act as "Holders" under the Indenture.  The so-called "beneficial holders" acquired certain rights with respect to the Notes in the original Offer memorandum and exchange Offer memorandum, both of which make this point clear:

> Except as described below,[7] owners of interest in the Global Notes will not have Notes registered in their names, will not receive physical delivery of the Notes in certificated form and ***will not be considered the registered owners or "Holders" thereof under the Indenture for any purpose.***

(Ex. 15 at 62 (emphasis added); Ex. 16 at 64 (emphasis added).)

---

[7] The Offer memoranda furnished a procedure by which the holders of beneficial interests could, in the event of a continuing "Event of Default," become "Holders" by exchanging their interests for "Certificated Notes" which would be registered in the name of the beneficial holder.  (Ex. 15 at 63; Ex. 16 at 66.)  Here, however, the "beneficial noteholders" never obtained "Certificated Notes."

The Trustee admitted that because the so-called "beneficial holders" are not "Holders" for any purpose under the Indenture, the "beneficial holders" were without any authority to direct the Trustee to accelerate the Notes:

> Q.    And I'm correct that **U.S. Bank is unaware of any provision of the indenture that would authorize beneficial holders to direct U.S. Bank to act, correct?**
>
> A.    **That's correct.**

(Ex. 5 at 47 (emphasis added).)

Thus, it is undisputed that the Trustee accelerated the Notes at the behest of so-called "beneficial holders" who had no authority to direct the Trustee to accelerate the Notes. The Notice of Acceleration, which falsely represented that the Trustee was "acting upon a direction of a majority of Note Holders," is therefore defective and invalid.

## III.    The Notice of Acceleration is also defective and invalid because the Trustee purported to accelerate on the basis of a default notice that does not exist.

The Notice of Acceleration is invalid for another reason as well:  it purports to be based on an "Event of Default" triggered by a "March 19, 2007 . . . written notice" that does not exist. (Ex. 4.)

Under the Indenture, a Notice of Acceleration must be based on a valid Notice of Default. The Indenture provides that a failure to comply with a requirement of the Indenture, such as the "informational" requirement of Section 4.02, does not ripen into an "Event of Default" unless Landry's has failed to comply "for 30 days after written notice."  (Ex. 1, § 6.01(4).)  Thus, for an alleged failure to ripen into an "Event of Default," the following events must occur, in order: (1)  Landry's must fail to comply with an agreement in the Indenture; (2) the Trustee must give Landry's a valid written notice, triggering the 30-day "cure" period; and (3) Landry's must fail to cure the default within the 30-day "cure" period.  (Ex. 1, § 6.01(4).)

The Notice of Acceleration represents that an "Event of Default" occurred because (1) Landry's allegedly failed to comply with the "informational" requirement of Section 4.02, (2) the Trustee sent a "March 19, 2007 . . . written notice," and (3) Landry's did not remedy the alleged failure within 30 days after the "March 19, 2007 . . . written notice."  Specifically, the Notice of Acceleration states:

> ***On March 19, 2007, the Trustee sent a written notice to the Company*** noting the Company's failure to file the Company's Form 10-K in a timely manner, and demanding that such failure be remedied.  The Company did not remedy such failure within the 30 day period following such notice.  Accordingly, such failure resulted in an Event of Default on or around April 19, 2007.

(Ex. 4 (emphasis added).)

This representation is incorrect because the referenced "March 19, 2007 . . . written notice" does not exist.  The Trustee has admitted this point:

> Q.     ***So there was no March 19th letter sent to Landry's, correct?***
>
> A.     ***Correct.***

(Ex. 5 at 42 (emphasis added).)  Thus, the Notice of Acceleration could not specify an existing "Event of Default."  For this additional reason, the Notice of Acceleration is defective and invalid.

## IV.     The Trustee could not have accelerated on the basis of the March 20, 2007 Notice of Default, because that notice was legally invalid.

Because the Trustee purported to accelerate the Notes without the authority it claimed, and on the basis of a "March 19, 2007 . . . written notice" that does not exist, Landry's is entitled to summary judgment and the Court need not determine whether the Trustee could have accelerated the Notes on the basis of the March 20, 2007 Notice of Default.  Nevertheless, it is

clear that the Trustee could not have accelerated the Notes on the basis of the March 20, 2007 Notice of Default, because the March 20, 2007 Notice of Default was legally invalid.

> ### A. Landry's filed the notice required by Rule 12b-25 on March 16, 2007, so it was not in default on March 20, 2007.

Because Landry's filed the notice required by Rule 12b-25 on March 16, 2007, the SEC's rules provided a 15-day grace period for Landry's to file its Form 10-K.  *See* 17 C.F.R. § 240.12b-25.  Section 4.02 of the Indenture allows Landry's to furnish financial information to the Trustee at any time "within the time periods specified in the [Securities and Exchange] Commission's rules and regulations."  (Ex. 1, § 4.02(a).)  Therefore, Landry's was in compliance with Section 4.02 when the Trustee issued a Notice of Default on March 20, 2007.

The Trustee has not cited a single case or statute that stands for the proposition that during the 15-day grace period afforded under Rule 12b-25, registrants are deemed "late."  The one citation provided by the Trustee is to an SEC enforcement action, *SEC v. Spiegel*, No. Civ. A. 03 C 1685, 2003 WL 22176223 (N.D. Ill. Sept. 15, 2003), against a company that fraudulently concealed from investors that its auditor was going to issue a going-concern opinion by not filing its Form 10-K and omitting this material fact in its Form 12b-25, press release, and Form 8-K.  Here, by contrast, Landry's filed a Form 12b-25 with the expectation that it would file its Form 10-K within 15 days.  (Ex. 2.)  On March 30, Landry's issued a Form 8-K with material financial information about the company's fourth-quarter performance and disclosed the reason it was unable to file its Form 10-K on March 16.  (Ex. 8.)  *Spiegel* does not address the circumstances presented here.

In any event, because the 15-day period is expressly provided by SEC rules and regulations, the 15 days are "within the time periods specified in the Commission's rules and regulations."  (Ex. 1, § 4.02.)  Therefore, when the Trustee issued the purported Notice of

Default, Landry's had not failed to file its Form 10-K "within the time periods specified in the Commission's rules and regulations."  (Ex. 1, § 4.02.)

There is no merit to the Trustee's argument that Landry's was nevertheless in default because Section 4.02 requires Landry's to submit financial information to the Trustee "whether or not required by the Commission."  (Ex. 1, § 4.02.)  The Trustee misconstrues this phrase to mean that "even if [Landry's] does not file the information with the Securities and Exchange Commission . . . , it must still provide the information to the Trustee *within the time periods* specified by the Commission's rules and regulations."  (Doc. #10, Trustee's August 8, 2007 Motion to Vacate TRO at 3-4 (emphasis added).)  That reading of Section 4.02 is incorrect.  As explained in the Commentaries on Model Indenture Provisions, the phrase "whether or not required by the Commission" is intended to ensure that a company provides the information to the Trustee that would be included on a Form 10-Q or 10-K, even if that company is not within one of the classes of companies that the SEC requires to file a Form 10-Q or 10-K.  (*See* Ex. 17, Commentaries on Model Debenture Indenture Provisions at 288-89, 331-32 (1965).)  In other words, the provision means that a company that is *exempt* from filing a Form 10-K still must provide the information to the Trustee *at the same time* its Form 10-K, if required, would have been due.  The provision does not mean that a company that is *required* to file a Form 10-K must provide the information to the Trustee *before* it is able to complete and file the Form 10-K with the SEC.

The interpretation set forth in the Commentaries on Model Indenture Provisions, in addition to being supported by authority, is the only sensible reading of Section 4.02.  As contemplated by Rule 12b-25, Landry's did not file the Form 10-K because it did not yet have the information necessary to complete the Form.  The Trustee's misreading of Section 4.02

would have required Landry's to furnish incomplete and possibly inaccurate information to the Trustee.  That interpretation of Section 4.02 makes no sense.  Landry's was not in default under either the Indenture or the SEC's rules when the Trustee issued the Notice of Default on March 20, 2007.

Nor is there any merit to the Trustee's suggestion that Section 4.06 of the Indenture somehow precluded Landry's from filing the notice required by Rule 12b-25.  Section 4.06 provides that under certain circumstances, Landry's may not claim the benefit of "any stay, extension or usury law."  (Ex. 1, § 4.06.)  That provision is inapplicable here.  Landry's did not ask the SEC to grant it a "stay," "extension," or any other type of special accommodation or exemption from the Indenture or the SEC's rules and regulations governing the timing of filing a Form 10-K.  Instead, as Landry's was required to do, it properly filed a notice under Rule 12b-25, one of the SEC's rules and regulations governing timing.  Therefore, Section 4.06 does not apply.

Finally, it makes no difference whether a default occurred **after** the Notice of Default was sent, because Section 6.01(4) and a long line of cases require that a default must occur **before** a valid notice of default may be issued.  A premature notice is a legal nullity and invalid for all purposes.  *Darnet Realty Assoc., L.L.C. v. 136 E. 56th St. Owners, Inc.*, 153 F.3d 21, 28-30 (2d Cir. 1998) (applying New York Law) (a notice of termination sent before the occurrence of an event triggering a right to terminate was invalid, and a purported termination based on the invalid notice was a "nullity as a matter of law"); *Miller v. Miller*, 179 Cal. Rptr. 753, 754 (Cal. Ct. App. 1982) (a notice of default issued prior to any event of default failed to trigger the applicable "due on" clause and "constituted a nullity"); *Application of the Ins. Co. of N. Am.*, 425 N.Y.S.2d 479, 482 (N.Y. Sup. Ct. 1980) (a purported notice of cancellation sent prior to the date the premium

17

was due was premature and, therefore, invalid); *see also, e.g.*, *Am. Techs. Credit, Inc. v. Friedman Homes, Inc.*, No. G014157, 2002 WL 799874 at *1, *5 (Cal. Ct. App. April 30, 2002) (a notice of default sent prior to the event of default was defective); *Elliot Assocs., L.P. v. Bio-Response, Inc*., No. CIV. A. No. 10624, 1989 WL 55070 at *1 (Del. Ch. May 23, 1989) (dismissing the plaintiffs' complaint concerning a company's default under its indenture, because there had been no default at the time the complaint was filed and thus there was no basis upon which the plaintiffs could have given a valid notice of default prior to filing).

When Landry's counsel received the March 20, 2007 Notice of Default, it informed the Trustee that the Notice of Default was premature and defective.  (Ex. 9.)  However, the Trustee made no attempt to fix its mistake and chose instead to leave the premature and defective Notice of Default in place.  Because the March 20, 2007 Notice of Default was premature, it was legally invalid.

**B.     The March 20, 2007 Notice of Default was also invalid because it failed to comply with notice requirements set forth in the Indenture.**

In addition to the fact that Landry's was not in default on March 20, 2007, the March 20, 2007 Notice of Default was also invalid because it failed to comply with notice requirements set forth in the Indenture.  The Indenture provides that any notice to Landry's must be sent to the attention of Steven L. Scheinthal, Landry's Executive Vice President, General Counsel, and Secretary.  (Ex. 1, § 13.02.)  However, the Trustee admits that it did not send the March 20, 2007 Notice of Default to Mr. Scheinthal.  (Ex. 3; Ex. 5 at 22, 87-88.)  A notice that is sent to the wrong party is "void and of no effect."  *In re St. Casimir*, 358 B.R. at 30, 40-41 (a notice sent to the company president's personal attorney and one of the company's two shareholders was "void and of no effect" because the agreement specified that notice must be sent to the company's president and the company's outside counsel); *see also Dale*, 471 N.Y.S.2d at 185-86 (mailing

the notice to an address other than the one set forth in the promissory note was insufficient to activate an event of default and permit acceleration); *Murray Hill Mello Corp. v. Bonne Bouchee Restaurant, Inc.*, 449 N.Y.S.2d 870, 873-74 (N.Y. City Civ. Ct. 1982) (a notice of default sent by an attorney for the secured party rather than the tenant's landlord did not strictly comply with the lease and was void).

The March 20, 2007 Notice of Default also failed to satisfy the notice requirements because it failed to correctly describe any requirement in the Indenture that Landry's was allegedly violating. The March 20, 2007 Notice of Default stated that Landry's was in default for failing to "file[] a copy of the Form 10-K with the Commission or with the Trustee." (Ex. 3.) However, that is not what Section 4.02 of the Indenture requires. Rather than requiring Landry's to give the Trustee an actual Form 10-K, Section 4.02 required Landry's to give the Trustee "all quarterly and annual information that would be required to be contained in a filing with the Commission on Forms 10-Q and 10-K . . . ." (Ex. 5 at 18-19; Ex. 1, § 4.02.) Thus, as even the Trustee now admits, the March 20, 2007 Notice of Default failed to correctly describe the requirement in the Indenture that Landry's was allegedly violating. (Ex. 5 at 18-22, 29.)

Because the March 20, 2007 Notice of Default was not sent to the person specified by the Indenture, and because it failed to correctly describe any obligation actually imposed by the Indenture, the Notice of Default was invalid. Because it was invalid, the notice did not trigger the 30-day "cure" period. Because there was no 30-day period during which Landry's was required to cure, its supposed failure to comply with the "informational" requirement of Section 4.02 could not have been an "Event of Default." Therefore, the Notice of Acceleration is invalid. *In re St. Casimir,* 358 B.R. at 40 (a defective notice of default cannot trigger acceleration); *Elliot Assocs.*, 1989 WL 55070, at *1 (same); *Dale*, 571 N.Y.S.2d at 186 (same); *see also, e.g., Bonne*

19

*Bouchee*, 449 N.Y.S.2d at 874 (because the notice of default was invalid, the purported notice of termination was void); *Darnet Realty Assoc.*, 153 F.3d at 29-30 (a termination based on an invalid notice was a "nullity as a matter of law").   Even if the Trustee had not misrepresented that it was "acting upon the direction of a majority of Note Holders," and even if the Trustee had purported to accelerate on the basis of the March 20, 2007 Notice of Default, the Trustee would have had no right to accelerate the Notes.[8]

## V.   Landry's filing of its Form 10-K precludes any finding of a continuing "Event of Default" which, in turn, precludes acceleration.

On August 10, 2007, Landry's filed its Form 10-K, the delayed filing of which was the sole basis for defendants' Notice of Acceleration.   Under Section 6.02, the Trustee may accelerate the Notes only if an "Event of Default" "occurs and is continuing."   (Ex 1, § 6.02.) Where, as here, a company cures an alleged default before a valid notice of default has been issued, a noteholder cannot accelerate the debt.   *See, e.g., Karabu v. Pension Benefit Guar. Corp.*, No. 96 Civ. 4960 (BSJ), 1997 WL 759462, at *11 (S.D.N.Y. Dec. 10, 1997).

In *Karabu*, the plaintiff provided Trans World Airlines, Inc. ("TWA") with $200 million of debtor-in-possession financing.   The plaintiff claimed that TWA's failure to maintain aircraft and engines which served as collateral under a security agreement constituted an event of default, and it sought to compel the trustee to issue a notice of default.   1997 WL 759462, at *1. Under the security agreement, however, acceleration of the debt was available only if the event of default "occurred and [was] continuing."   *Id.*   Applying New York law, the court ruled that TWA was not in default of its contractual maintenance obligations at the time of the complaint,

---

[8] The Trustee has also suggested that it may accelerate the Notes under the theory that Landry's publicly admitted on July 25, 2007 that a default had occurred and that the Notes were due and payable.   In its public statements, however, Landry's was merely reporting the Trustee's actions.   Landry's compliance with its disclosure obligations does not obviate the requirement that the Trustee issue a notice of default that complies with the Indenture.

even though TWA had, in the past, failed to perform those obligations.  *Id.*  Thus, there could be no acceleration of the underlying debt because TWA's non-compliance with the security agreement was not "continuing" at the time of the notice.  *Id.*

The Indenture at issue here, like the instrument in *Karabu*, precludes the acceleration of a debt unless the default is "continuing."  (Ex. 1, § 6.02.)  The alleged default was cured by Landry on August 10, 2007 when it filed its 2006 Form 10-K.  Thus, any possible default was no longer "continuing" and the Trustee is precluded from issuing a Notice of Acceleration.  Indeed, even the Trustee concedes that it cannot issue a new Notice of Acceleration, because Landry's alleged default "may have been extinguished" by the filing of the Form 10-K.  (Doc. #10.)  Therefore, the Court should grant summary judgment for Landry's.

## CONCLUSION

For all of the foregoing reasons, Landry's respectfully requests that the Court grant this motion for summary judgment and enter judgment as a matter of law declaring that:

(i)   the Trustee's March 20, 2007 Notice of Default and July 24, 2007 Notice of Acceleration are invalid;

(ii)  the Trustee breached the Indenture by improperly accelerating the Notes without complying with the procedures required by the Indenture; and

(iii) Landry's is entitled to recover all reasonable and necessary attorneys' fees and expenses expended in prosecuting this action.

Landry's also requests all further relief to which it is entitled.

Respectfully submitted,

*/s/ Anthony G. Buzbee*

Anthony G. Buzbee
State Bar No. 24001820
Southern District Bar No. 22679
1910 Ice & Cold Storage Building
104 21st Street
Galveston, Texas  77550
Telephone: (409) 762-5393
Telecopier: (409) 762-0538

ATTORNEY-IN-CHARGE FOR PLAINTIFF,
LANDRY'S RESTAURANTS, INC.

OF COUNSEL:

Thomas E. Kurth
Patricia L. Casey
Odean L. Volker
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 2100
Houston, Texas  77010-2007
Telephone: (713) 547-2000
Telecopier: (713) 547-2600

George W. Vie III
MILLS SHIRLEY L.L.P.
2228 Mechanic Street, Suite 400
Galveston, Texas  77553-1943
Telephone: (409) 763-2341
Telecopier: (409) 763-2879

J. Wiley George
Charles B. Hampton
ANDREWS KURTH LLP
600 Travis Street, Suite 4200
Houston, Texas  77002
Telephone: (713) 220-3938
Telecopier: (713) 220-3943

Miranda S. Schiller
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone: (212) 310-8000
Telecopier: (212) 310-8007

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed with the Court's ECF system and served (1) via electronic transmission by the Court on those parties authorized to participate and access the Electronic Filing System for the Southern District of Texas, and (2) via e-mail or facsimile on the parties appearing below on August 15, 2007.

**_Counsel for Post Advisory Group and Lord Abbett_:**

Kathy D. Patrick
Scott A. Humphries
Brandon T. Allen
Ayesha Najam
Matthew D. Cooper
GIBBS & BRUNS, LLP
1100 Louisiana Street, Suite 5300
Houston, Texas  77002
kpatrick@gibbs-bruns.com
shumphries@gibbs-bruns.com
ballen@gibbs-bruns.com
anajam@gibbs-bruns.com
mcooper@gibbs-bruns.com

**_Counsel for U.S. Bank_:**

| | |
|---|---|
| Gerard G. Pecht | Alton C. Todd |
| Layne E. Kruse | THE LAW FIRM OF ALTON C. TODD |
| Steven L. Roberts | 312 S. Friendswood Drive |
| Reagan M. Brown | Friendswood, Texas  77546 |
| Edward J. Patterson | Via Facsimile: (281) 648-8633 |
| FULBRIGHT & JAWORSKI L.L.P. | |
| 1301 McKinney, Suite 5100 | |
| Houston, Texas  77010-3095 | Ira H. Goldman |
| gpecht@fulbright.com | Julie A. Manning |
| lkruse@fulbright.com | SHIPMAN & GOODWIN, LLP |
| slroberts@fulbright.com | One Constitution Plaza |
| rbrown@fulbright.com | Hartford, Connecticut  06103-1919 |
| epatterson@fulbright.com | igoldman@goodwin.com |
| | jmanning@goodwin.com |

_/s/ Patricia L. Casey_
Patricia L. Casey

H-688578.9