UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| LANDRY'S RESTAURANTS, INC. | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| POST ADVISORY GROUP, LLC and | § |
| LORD ABBETT BOND-DEBENTURE | § |
| FUND, INC., U.S. BANK NATIONAL | § NO. 3:07-CV-00406 |
| ASSOCIATION, solely in its capacity as | § |
| Indenture Trustee on behalf of all Holders of | § |
| Landry's Restaurants, Inc.'s 7.50% Senior | § |
| Notes Due 2014, | § |
| | § |
| Defendants. | § |
| | § |

**PLAINTIFF LANDRY'S RESTAURANTS, INC.'S VERIFIED FIRST AMENDED
COMPLAINT, APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND INJUNCTIVE RELIEF**

Plaintiff Landry's Restaurants, Inc. ("Landry's" or the "Company") files this first amended complaint and application for injunctive relief against Post Advisory Group, LLC ("Post") and Lord Abbett Bond-Debenture Fund, Inc. ("Lord Abbett") (together "the Funds") and US Bank National Association (the "Trustee" or "U.S. Bank") (collectively, "Defendants"); in its capacity as Trustee[1] under the Indenture dated December 28, 2004 for Landry's Restaurants, Inc.'s 7.50% Senior Notes due 2014[2] (the "Indenture")[3]. The Plaintiff alleges as follows:

---

[1]   U.S. Bank is successor to Wachovia Bank, National Association as Indenture Trustee.

[2] The 7.5% Senior Notes issued pursuant to the Indenture are referred to herein as the "Senior Notes."

[3] The Indenture is attached hereto as Exhibit 1.

## I.   Introduction

1.     This action arises from an attempt by opportunistic funds to distort the plain language of the Indenture.  The Funds with the cooperation of the Trustee and others have attempted to manufacture grounds for a minor default under the Indenture that would allow the Funds to accelerate the Notes and thereby reap an extraordinary and unmerited windfall.

2.     From the outset, these Defendants along with others embarked on a scheme designed solely to maximize the Funds' short-term financial gain at the expense of Landry's, its stockholders, and the investing public.  Defendants hatched a scheme to improperly accelerate the Senior Notes, and then extort forbearance fees, consent fees, increased interest rates and onerous concessions from Landry's.

3.     Asserting that Landry's violated section 4.02(a)(1) by failing to file its Form 10-K for the year ended 12/31/06 with the SEC by March 16, 2007 and failing to furnish the Trustee with a copy of the Form 10-K, the Trustee issued its purported Notice of Default on March 20, 2007.

4.     Section 4.02(a)(1) does not require Landry's to file its Form 10-K and does not require Landry's to furnish the Trustee with a copy of the Form 10-K.  Instead, the Indenture requires only that Landry's "furnish to the Trustee, within the time periods specified by the [SEC's] rules and regulations—all quarterly and annual financial information that would be required to be contained in a filing with the [SEC] on Forms 10-Q and 10-K.  Indenture, § 4.02(a)(1).  Section 4.02(c) provides that this information "is for informational purposes only." Section 4.02(a)(1) of the Indenture does not prohibit Landry's from obtaining additional time to file its financial reports.  Indeed, the SEC rules, specifically Rule 12b-25, authorized such action.

5.     As permitted by the SEC rules and regulations referred to in section 4.02(a)(1), Landry's filed a Form 12b-25, which triggered a grace period in which to file its Form 10-K. Landry's Form 12b-25, filed with the SEC on March 16, 2007, is attached as Exhibit 1. Rule 12b-25 automatically imposes a 15-day grace period in which the filer may file its Form 10-K. Accordingly, Landry's had until March 31, 2007 to file its Form 10-K.

6.     Under the clear provisions of section 4.02(a)(1), Landry's was entitled to rely on the rules and regulations of the SEC, which provided a grace period for filing its Form 10-K. Nevertheless, ignoring the very rule it cited, the Trustee issued its Notice of Default on March 20, 2007. Accordingly, the Notice of Default was untimely, improper, and premature..

7.     The Notice of Default is fatally defective in other respects. Specifically, the Trustee failed to issue the Notice of Default in compliance with the Indenture's notice provision. The Trustee failed to send the notice to the attention of Steven L. Scheinthal, the person specified in the Indenture as the correct person to receive it.

8.     The Holder was not even informed of the Notice of Default until after the Notice was served.

9.     Landry's notified the Trustee that no default had occurred and that the Notice of Default was, therefore, defective.

10.    The Trustee made no effort to cure the defective notice.

11.    On July 24, 2007, the Trustee issued a purported Notice of Acceleration that also was fatally defective. First, the Notice of Acceleration states that it is based on a *non-existent* March 19, 2007 Notice of Default. Second, the Notice also states it was made pursuant to the direction of the majority of the senior noteholders and it was not. Lastly, even if it had been

referenced in the Notice of Acceleration, the March 20, 2007 Notice of Default was sent to Landry's cannot support the purported Notice of Acceleration

12.     Since the execution of the Indenture on December 28, 2004, Landry's has made every required payment under the Indenture. In short, there has been no material breach of any of Landry's obligations under the Indenture. Indeed, Landry's made a $15,000,000 interest payment on June 16, 2007, which the Trustee accepted without question.

13.     The Trustee has taken unreasonable positions and engaged in unreasonable conduct at the behest of Post and Lord Abbett—both recent investors in Senior Notes, eager to void the bargain struck with Landry's in the 2004 Indenture so as to take advantage of tightening credit market conditions.[4]

14.     In addition, Defendants have intentionally and materially breached the terms of the Indenture or, in the alternative, tortiously interfered with Landry's business relations, disparaged the Company, and attempted to saddle the Company with new obligations in violation of the Trust Indenture Act of 1939.

15.     As a result, Landry's has suffered and continues to suffer irreparable economic harm from Defendants' actions and their continuing threats of future improper actions. Therefore, Landry's respectfully seeks injunctive relief to preserve the status quo during this litigation. Among other things, the requested injunction would afford the Company a measure of relief from the uncertainty and controversy that presently exist with respect to the parties' respective rights and obligations under the Indenture.

---

[4]     On information and belief, Post and Lord Abbett have purported to form an "Ad Hoc Committee" of Landry's bondholders (the "Ad Hoc Committee"). They announced the Ad Hoc Committee's formation after close of the market on July 26, 2007.

## II.    Jurisdiction and Venue

16.    This Court has jurisdiction over this matter pursuant to the Court's federal question jurisdiction, 28 U.S.C. § 1331,  as claims in this case arise under the Trust Indenture Act of 1939, 15 U.S.C. § 77aaa et seq. (the "Trust Indenture Act"), and Securities Act of 1933, 15 U.S.C. 78a et seq. (the "Securities Act").

17.    The Court has supplemental jurisdiction over Landry's state law claims arising out of the same nucleus of operative facts under 28 U.S.C. § 1367.

18.    Venue is proper under 28 U.S.C. §§ 1391(a) and (b) because many of the acts and transactions giving rise to this action occurred in this District.

## III.   Parties

19.    Plaintiff Landry's Restaurants, Inc. is a national, diversified restaurant hospitality and entertainment company employing more than 28,000 employees and principally engaged in the ownership and operation of full-service, casual dining restaurants.   Landry's is duly organized as a corporation existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas.  Its common stock is registered with the SEC pursuant to Section 12(d) of the Securities Exchange Act, 15 U.S.C. §78l(b), and it is listed and traded on the New York Stock Exchange.

20.    Defendant Post is an agent for certain funds and reportedly has $9.0 billion in assets under management.  Post is organized as a limited liability company with its principal place of business at 11755 Wilshire Blvd., Suite 1400, Los Angeles, California.  It may be served through its registered agent Lawrence A. Post at its principal place of business.

21.    Defendant Lord Abbett is a mutual fund with $7.6 billion in assets.   This corporation is organized under the laws of Maryland with its principal place of business at 7 St.

Paul Street, Suite 1660, Baltimore, Maryland. It may be served through its registered agent The Prentice-Hall Corporation System, MA at its principal place of business.

22.     Defendant U.S. Bank is a corporation organized under the laws of Colorado. Its principal place of business is 800 Nicollet Mall, Minneapolis, Minnesota or in St. Paul, Minnesota. U.S. Bank can be served through the Corporation Company at 1675 Broadway, Suite 1200, Denver, Colorado.

23.     Landry's reserves the right to amend this complaint to include as Defendants those acting in concert with Defendants named herein.

## IV.     **Facts**

24.     On December 28, 2004, Landry's, as issuer, entered the Indenture, pursuant to which Landry's completed a public offering of $400 million in 7.5% Senior Notes due 2014. Indenture, p. 1.

25.     Section 4.02 of the Indenture requires Landry's to provide certain financial information and reports to the Trustee, as follows:

> (a)     [T]he Company shall furnish to the Trustee, within the time periods specified in the Commission's rules and regulations:
>
> (1)     all quarterly and annual financial information that would be required to be contained in a filing with the Commission on Forms 10-Q and 10-K if the Company were required to file such Forms ...; and

Indenture at § 4.02(a)(a)(1)

26.     Section 4.02(c) makes clear that the financial information provided pursuant to section 4.02(a)(1) if for "information purposes only." Section 4.02(c) provides:

> Delivery of such reports, information, and documents to the Trustee pursuant to this Section 4.02 is for informational purposes only ....

Indenture, § 4.02(c).

27.    On March 16, 2007, Landry's timely filed a Form 12b-25, which stated that the Company's board would delay the filing of its Form 10-K for the year ended December 31, 2006 due to the volume of data subject to the Company's ongoing, voluntary internal review of its stock option program. Form 12b-25 at 2.

28.    Pursuant to Rule 12b-25, the filing of a Form 12b-25 obtains for the issuer a 15-day grace period in which to file the Form 10-K. Accordingly, Landry's Form 10-K would be deemed timely filed if it was filed by March 31, 2007.

29.    Four days after the Form 12b-25 was filed, the Trustee sent Landry's a Notice of Default citing section 4.02(a)(1) and stating: "As of this date, the Company has not filed a copy of the Form 10-K with the Commission or with the Trustee. Accordingly, the Trustee hereby notifies the Company that a default occurred under Section 6.01(4) of the Indenture." Letter from U.S. Bank to Landry's dated March 20, 2007, attached as Exhibit 2.

30.    Relying on the time period specified in the SEC rules and regulations, Landry's obtained a grace period within which to file its Form 10-K. Accordingly, the Notice of Default was issued during a time when Landry's was not in default under the Indenture.

31.    The Trustee further claimed that the alleged default under 4.02(a)(1) would ripen into an Event of Default under section 6.01 of the Indenture if it was not cured within 30 days of the Notice of Default. See letter from U.S. Bank to Landry's dated March 20, 2007, attached as Exhibit 2.

32.    Despite the Trustee's claims, Section 6.01(4) of the Indenture does not itself create any new obligation on the Company. Instead, section 6.01(4) defines "Event of Default" to include "failure by the Company ... for 30 days after written notice by the Trustee or Holders

representing 25% or more of the aggregate principal amount of the Notes outstanding to comply with any of the other agreements in this Indenture." Indenture, § 6.01(4).

33.    As previously discussed, the Notice of Default was issued under section 4.02(a)(1), was premature and further, did not demand that Landry's comply with any requirements of section 4.02(a)(1). Accordingly, the purported default described in the Notice of Default did not mature into an "Event of Default."

34.    On March 23, 2007, Landry's counsel responded to the Trustee, stating that no default had occurred because the Company had timely filed a Form 12b-25 with the SEC, and thus had an additional 15-days within which to file its Form 10-K.

35.    Compounding the problems with the Notice of Default, the Notice was not sent in compliance with the requirements of the Indenture.

36.    Section 13.02 of the Indenture provides that notices to Landry's shall be given to:

> Landry's Restaurants, Inc.
> 1510 West Loop South
> Houston, Texas 77027
> Attention:  Steven L. Scheinthal

37.    Contrary to the requirements of section 13.02, the Trustee mailed the Notice of Default to Rick Liem, Landry's Chief Financial Officer. Under New York law, which governs the Indenture notice provisions, which are expressly agreed to by parties to an indenture are considered to be an express condition precedent that requires strict compliance.

38.    Despite the fact that Landry's was unable to file its Form 10-K by the initial deadline, Landry's did what it could to keep the market informed of its financial condition. Landry's did so through filing a number of Form 8-K's with the SEC and making public announcement through press releases as follows:

a.      March 30, 2007, Form 8-K:   Landry's Restaurants, Inc. Announces
        Update of Stock Option review and Selected Financial results for 2006 –
        attached as Exhibit 4.

b.      June 14, 2007, Form 8-K: Landry's Restaurants, Inc. Announces Selected
        Financial Results for First Quarter 2007 and Golden Nugget Financing –
        attached as Exhibit 5.

c.      July 27, 2007, Form 8-K: Landry's Restaurants, Inc. Announces Results of
        Stock Option Review – Company Expects to File 2006 Annual Report
        Shortly – attached as Exhibit 6.

39.     On April 23, 2007, the Trustee provided the Holder of the Senior Notes with a

"Notice of Event of Default." The Trustee advised the Holder:

> The Indenture provides that, in case of an Event of Default, the Indenture Trustee
> shall exercise the rights and powers vested in it by the Indenture in the same
> manner that a prudent person would under the circumstances in the conduct of his
> or her own affairs . . . The Indenture Trustee will pursue the remedies available
> within the Indenture and related documents in a manner that it deems prudent to
> protect the interests of Note holders.  Pursuant to that standard, the Indenture
> Trustee does not intend to take action to accelerate the Notes at this time.

See "Notice of Event of Default" attached as Exhibit 7 (emphasis added)

40.     The Trustee believed that it was prudent to not accelerate the Senior Notes, and

never advised the Holder of a change in its view that a prudent person would not take action to

accelerate the Senior Notes.

41.     After the Event of Defaults, Post Continued to accumulate the Senior Notes.

42.     Even after the Notice of Acceleration, Lord Abbett was continuing to accumulate

millions of dollars worth of Senior Notes.

43.     Relying on its untimely, ineffective and defective Notice of Default, the Trustee,

on July 24, 2007, sent Landry's a Notice of Acceleration declaring the Notes due and demanding

immediate payment.  See letter from U.S. Bank to Landry's dated July 24, 2007, attached as

Exhibit 8.

44.    In giving the Notice of Acceleration, the Trustee claimed to be acting on "a direction of a majority of the Note Holders given pursuant to Section 6.05 of the Indenture . . . " Notice of Acceleration attached as Exhibit 8.  The Trustee relied on no other authorization for giving the Notice of Acceleration.

45.    Contrary to the Trustee's assertion in the Notice of Acceleration, it did not receive any direction from the Holder of the Senior Notes.

46.    Pursuant to Section 6.05 of the Indenture:

> The Holders of a majority in the aggregate principal amount of the Notes then outstanding shall have the right, by an instrument or concurrent instruments in writing executed and delivered to the Trustee, to direct the time method and place of conducting any proceeding or exercising any remedy available to the Trustee under this Indenture or exercising any trust or power conferred on such Trustee . .

47.    The term "Holder" is defined under the Indenture as the Person in whose name a Note is registered on the Registrar's books.  Indenture, § 1.01.  US. Bank has advised that the only Person in whose name any Note is registered on the books of the Registrar, US Bank, is CEDE & Co as nominee for Depository Trust Company.  Letter from Timothy Pillar to Steven L. Scheinthal and Rick Liem dated August 3, 2007, attached as Exhibit 9.

48.    CEDE & Co. as nominee for Depository Trust Company did not give the Trustee any direction much less direction to accelerate the Senior Notes.   Nor did Post or Lord Abbett cause Depository Trust company to issue any such instructions.

49.    Instead, the direction that US Bank received was from beneficial holders or agents for beneficial holders including Post, Lord Abbett and other conspiring with them.  Nothing in section 6.05 of the Indenture authorizes beneficial holders or agents for beneficial holders to direct the Trustee.  The Trustee breached the Indenture by accepting direction from the beneficial

holders as opposed to the "Holder" to accelerate the Senior Notes. In doing so, the Trustees also violated its duty of prudence.

50.     Even if the Trustee were authorized to receive direction from the beneficial holders or agents for beneficial holders, section 6.05 requires that the direction be contained in an "instrument or concurrent instruments." Of the instruments relied upon by the Trustee for direction, one is undated while others bear various dates from July 20 – 24, 2007. The instruments relied upon by the Trustee are not "concurrent", and, therefore, even if they were provided by entities with the right to direct the Trustee, they do not satisfy the requirement of the Indenture.

51.     Further, even if the Senior Notes were in default, by accelerating the Senior Notes and by following the direction of the beneficial holders or agents of the beneficial holders, the Trustee breached its duty of care imposed by the Trust Indenture Act.

52.     At a minimum, the Trustee's conduct constitutes actionable negligence under the Trust Indenture Act.

53.     Further, such actions by the Trustee constitute a blatant and intentional violation of the Indenture, the Trust Indenture Act, tortious interference with the Company's business relations and business disparagement. The Trustees and others should be enjoined as their acts have caused and will cause Landry's to suffer tremendous harm.   Among other things, these damages include:

- Lower credit ratings. Credit rating agencies such as Standard & Poors and Moody's have cut the Company's credit rating, which has and will substantially increase Landry's cost of capital. Landry's non-indentured bank creditors have approached the Company to increase its fees and rates, which will substantially increase its cost of doing business.

- Injury To Employees. An immediate acceleration of $400 million of debt that is not due to mature until 2014 will constrict for years to come the Company's

ability to grow and expand, which growth has been the hallmark of its success and the engine by which it has created hundreds of new jobs every year.

- <u>Decreased stock value</u>. The pretense that Landry's has "defaulted" on the Indenture has materially misled holders of Landry's equity and debt, thus corrupting the proper operation of the marketplace. It has also adversely affected the price of Landry's stock.

- <u>Business Plan</u>. Landry's cannot carry out its publicly announced business plans. Landry's is unable to actively pursue acquisitions or capital expenditures.

- <u>Attorney's fees</u>. Landry's has incurred, and will continue to incur, substantial legal costs and expenses in attempting to respond to and resolve Defendants' wrongful scheme.

54.    If Landry's is forced to accept terms for alternate credit arrangements, it will substantially alter the way Landry's has operated its business.

55.    In his deposition taken in this matter, counsel for US Bank asked Rick Liem, Landry's Chief Financial Officer, what he meant when he used the phrase "irreparable harm". Mr. Liem testified:

> If we are required to enter into the bank financing, we will be much more restricted in our ability to execute our business plan and our business strategies. We currently have a $300 million revolver with approximately $71 million used providing about $230 million of capital that we would have access to. Under the new bank financing, that number becomes more like 63 or 64 million dollars that we would have access to. That money is used for capital expansion. That money could be used for acquisitions. That money could be used to grow the company as the company has grown in the past. And so in addition to that, we clearly would be paying much higher interest expense. In addition to that all of the assets in the company would be effectively secured, which again, provides much less flexibility. I think more than that the fact that Landry's bonds were called, in our opinion, with an inappropriate notice of default despite the fact that we made every interest payment that we were supposed to make, despite the fact that we are a solidcompany that generates very good cash flow, and yet bondholders are able to call this debt and effectively change the entire capital structure of the company and limit our ability to grow, to me if you're a shareholder of Landry's, you have absolutely been damaged beyond -- I don't know how you calculate it because the stock price is not only going to go down because I have worse financing, the stock price is going to go down because I know longer have to flexibility to grow the company to meet the expectations that you might have met otherwise. I think that the impact on our employees or Landry's has been --their

bonds have been called and accelerated and we had somebody that said, you know, you owe us the money right away simply because I didn't publish my financial statements. I mean, the employees interact with our customers every single day, face to face. When you go to a restaurant, you deal with the wait staff. If that wait staff is nervous. If that wait staff doesn't understand what happened and thinks their company just had a $400 million call because clearly something must have been wrong at the company or it never would have happened. I mean, I think the ramification of customers getting uncomfortable is huge it's huge. There's just -- I -- there's no way of forecasting what Landry's would be like if these bonds are called and we required to enter into this bank financing, and I believe that, in fact, would be irreparable.

56.     The harm and irreparable harm to Landry's has been caused and contributed to by the certain beneficial holders of Senior Notes. After close of the securities markets on July 27, 2007, an unauthorized self-appointed "Ad Hoc Committee of Bondholders" (the "Ad Hoc Committee") announced its formation.

57.     The Ad Hoc Committee has attempted to initiate negotiations with Landry's on issues related to the Indenture. The Ad Hoc Committee's formation and activities violate the Indenture.

58.     Section 6.06 of the Indenture provides that:

No Holder of any Notes shall have any right to institute any proceeding, judicial or otherwise, or for appointment of a receive or trustee or pursue any remedy under this Indenture, unless:

(1)     such Holder has previously given written notice to the Trustee of a continuing Event of Default;

(2)     the Holders of not less than 25% in aggregate principal amount of the outstanding Notes have made written request to the Trustee to pursue such remedy, including, if applicable, to institute proceedings in respect of such Event of Default in its own name as Trustee under this Indenture;

(3)     such Holder or Holders have offered to the Trustee reasonable indemnity and security satisfactory to the Trustee against the costs, expense and liabilities to be incurred in compliance with such request;

(4)     the Trustee for 60 days after its receipt of such notice, request and offer of indemnity has failed to institute such requested proceeding; and

(5)     no direction inconsistent with such written request has been given to the Trustee during such 60-day period by the Holders of a majority in aggregate principal amount of the outstanding Notes.

A Holder may not use this Indenture to prejudice the rights of another Holder or to obtain a preference or priority over other Holders.

59.     Post, Lord Abbett, and other members of the purported Ad Hoc Committee, if any, have failed to satisfy the requirements of § 6.06 before taking unilateral action against Landry's. Accordingly, Post and Lord Abbett, and other members of the purported Ad Hoc Committee, if any, have breached the Indenture.

60.     Further, Defendants' announcement and continued activities have caused and risk continuing to cause immediate and irreparable harm to Landry's business reputation and credit rating. Post and Lord Abbett, and other members of the purported Ad Hoc Committee, should be enjoined from taking further action to interfere with the Indenture.

61.     Relying on the defective Notices of Default and Acceleration and acting outside the scope of the Indenture, the Post Advisory Group and Lord Abbett, acting through the artifice of the Ad Hoc Committee, made the following extortionate demands: $4 million to be paid in two (2) days, $1 million dollars per week, commencing August10, 2007 until no later than August 31, 2007, $65,000 in fees to their counsel, $10 million consent fee, an additional $14 million per year in interest payments and a whole sale re-writing of the Indenture to turn the unsecured notes into "secured notes, and increase the coupon rate.

62.     Further, in an effort to obtain Landry's compliance with their extortionate demands, the Post Advisory Group and Lord Abbett, acting through the artifice of the Ad Hoc Committee, made direct threats to seek immediate judicial remedies, that they had no right to pursue, if their demands were not met. If Post Advisory Group and Lord Abbett, acting through

the artifice of the Ad Hoc Committee, had followed through with their threat to seek immediate judicial remedies, the harm to Landry's would have been immeasurable.

63. On August 9, 2007, Landry's filed its Form 10-K for the year ended December 31, 2006. See Form 10-K for the year ended December 31, 2006 attached as Exhibit 10. As described above, the Trustee's Notice of Default and Notice of Acceleration were defective. As Landry's has now provided the Trustee with the financial information that would be required to be included in the Form 10-K, there can be no basis for a claimed Event of Default under that section of the Indenture.

64. Further, even if the Notice of Default had been effective and matured to an Event of Default under the Indenture, the Notice of Acceleration was defective as described above. Since the default claimed by the Trustee in its Notice of Default is not continuing, the Trustee has no basis to reissue the Notice of Acceleration.

65. An affirmative injunction should be issued requiring US Bank to rescind that defective Notice of Acceleration, immediately notify all known owners, beneficial holders and the holder of the Senior Notes as to the substance of the activities prohibited by the Court' s injunction, and provide each of them with a copy of this Court's injunction.

66. The injunction should further enjoin and preclude:

    (a)    the Trustee and all owners, beneficial holder, or holders of the Senior Notes, including but not limited to Post Advisory Group LLC and Lord Abbett Bond-Debenture Fund, Inc., and anyone acting in concert with them, from taking , enjoining any owner, beneficial holder or holder of a Senior Note from taking action based predicated upon the acceleration of the Senior Notes.

    (b)    the Trustee and all owners, beneficial holder, or holders of the Senior Notes, including but not limited to Post Advisory Group LLC and Lord Abbett Bond-Debenture Fund, Inc., and anyone acting in concert with them, from directly or indirectly communicating to any third-party person

or entity that (i) the Senior Notes have been accelerated, or (ii) that Landry's is not paying its debts as they come due.

V.   **Causes of Action**

A.   **Declaratory Judgment as to the Notice of Default.**

67.   Landry's repeats and realleges paragraph 1 through 63 as if fully set forth herein.

68.   As described in detail above, the Trustee's purported Notice of Default was defective for, at least, the following reasons:

a.   The Notice of Default is based on section 4.02(a)(1), however the Notice does not demand Landry's take any action that is required to comply with section 4.02(a)(1);

b.   The Notice of Default was untimely as Landry's had, pursuant to the rules and regulation of the SEC, obtained additional time to file its Form 10-K; and

c.   The Notice of Default does not comply with the notice requirements of the Indenture because it was not sent by the Trustee to the contractually specified recipients of such notice.

69.   The declaratory relief sought in this action will clarify and settle the legal relations between the parties and thus afford relief from the uncertainty and controversy that presently exist with respect to the parties' respective rights and obligations under the Indenture.

70.   Pursuant to 28 U.S.C. § 2201, Landry's is entitled to a declaratory judgment that it is not in default under the Indenture and that the Trustee's Notice of Default and Notice of Acceleration are void and of no effect.

71.   Accordingly, Landry's requests that the Court enter a judgment declaring the Notice of Default and Notice of Acceleration void and of no force and effect.

**B.**   **Declaratory judgment as to the Notice of Acceleration.**

72.   Landry's repeats and realleges paragraph 1 through 63 as if fully set forth herein.

73.   As described in detail above, the Trustee's purported Notice of Acceleration was defective for, at least, the following reasons:

a.   The Notice of Default was secured before Landry's was in default.

b.   The Notice of Acceleration was premised on a March 19, 2007 Notice of Default that was never sent to Landry's.

c.   The Notice of Acceleration is premised upon an "Event of Default" that never occurred as the March 20, 2007 purported Notice of Default was based on 4.02(a)(1), but did not demand that Landry's take any action to comply with the section 4.02(a)(1) of the Indenture.

d.   The alleged default was cured before a valid notice of default was issued and since there was no continuing Event of Default at the time of the cure, the Senior Notes cannot be accelerated.

e.   The Notice of Acceleration was purportedly issued solely at the direction of a majority Senior Note Holders, however no direction was given by the Holder of the Senior Notes.

f.   The direction that Trustee received and relied upon in sending in sending the Notice of Acceleration was given by beneficial holders or agents for beneficial holders.  There is no provision of the Indenture authorizing the Trustee to take direction from beneficial holders or agents of beneficial holders

g.   Even if the Indenture authorized the Trustee to take direction from beneficial holders or agents of beneficial holders, the direction received by the Trustee is deficient under the Indenture.  The Indenture requires "concurrent instruments" be used to give direction to the Trustee, and the instruments relied upon by the Trustee were not "concurrent."

74.   The declaratory relief sought in this action will clarify and settle the legal relations between the parties and thus afford relief from the uncertainty and controversy that presently exist with respect to the parties' respective rights and obligations under the Indenture.

75.     Pursuant to 28 U.S.C. § 2201, Landry's is entitled to a declaratory judgment that the Senior Notes were not properly accelerated, and the Notice of Acceleration is void and of no effect.

76.     Accordingly, Landry's requests that the Court ender a judgment declaring the Notice of Acceleration void and of no force and effect.

**C.     Breach of contract.**

77.     Landry's repeats and realleges paragraph 1 through 63 as if fully set forth herein.

78.     On December 28, 2004, the Company and the Trustee executed a valid and enforceable written indenture agreement, subject to the default provisions described in § 6.01. As beneficial holders of the Senior Notes, Defendants are bound by the terms of the Indenture and related documents.

79.     Trustee breached the Indenture in, at least, the following ways:

   a.     Issuing the purported Notice of Default

   b.     Issuing the Notice of Acceleration

   c.     Acting at direction from beneficial holders of the Senior Notes

   d.     Failing to look solely to the Holder of the Senior Notes for direction under section 6.02

   e.     Acting on direction given by the beneficial holders in non-concurrent instruments as described above.

   f.     Issuing a Notice of Acceleration premised on a March 19, 2007 Notice of Default that was never sent to Landry's.

80.     Post and Lord Abbett violated the Indenture in the following ways:

   a.     Taking action to seek a remedy against Landry's without first complying with section 6.06 of the Indenture

   b.     Purporting to direct the Trustee when the beneficial holders did not have the capacity to make such a direction

81.     Defendants conduct in breaching the Indenture is a proximate cause of damage to Landry's. Landry's seeks recovery of its damages from Defendants for their respective breaches of the Indenture.

82.     The Trustees breach of the Indenture and the Defendants action to accelerate the Notes threatens irreparable harm to Landry's.

### D.     **Violation of the Trust Indenture Act.**

83.     Landry's repeats and realleges paragraph 1 through 63 as if fully set forth herein.

84.     In the event of default, the Trust Indenture Act imposes a duty on the Trustee to exercise such rights and powers vested in the Trustee, and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

85.     In the event that the Senior Notes were in default, the Trustee breached its duty of prudence and reasonable care by accelerating the Senior Notes.

86.     Defendants conduct has caused and threatens to cause irreparable harm to Landry's. Further, the Trustee's breach of the Trust Indenture Act proximately caused damage to Landry's, and threaten the Company with further and irreparable harm.

### E.     **Violation of the Trust Indenture Act.**

87.     Landry's repeats and realleges paragraph 1 through 63 as if fully set forth herein.

88.     Pursuant to the Trust Indenture Act, the Trustee is liable for its own negligent failure to act or its own willful misconduct.

89.     The Trustee is liable for damage caused by, at least, the following negligent or willful acts:

    a.      Acting on direction from beneficial holders or agents for beneficial holders when neither are entitled to give the beneficial holder direction;

    b.      Acting on defective direction given on non-concurrent instruments; and

    c.      Issuing a Notice of Acceleration without justification.

90.    Defendants conduct has caused and threatens to cause irreparable harm to Landry's. Further, the Trustee's breach of the Trust Indenture Act proximately caused damage to Landry's. Landry's seeks recovery of its damages from US Bank for its breach of the Trust Indenture Act.

**E.    Tortious interference with business relations.**

91.    Landry's repeats and realleges paragraph 1 through 63 as if fully set forth herein.

92.    As described above, the Company and the Trustee executed a valid and enforceable written indenture agreement. The Company also has valid and enforceable credit agreements with its secured lenders. Defendants had knowledge of those arrangements and their terms as they are a matter of public record. At a minimum, Defendants had constructive knowledge of Landry's non-indenture credit arrangements.

93.    Defendants' willful and intentional conduct as describe herein has interfered with the Company's contracts with its secured creditors, and impartial cross-default provisions.

94.    Such interference is a proximate cause of damages, including but not limited to the downgrading of the Company's credit rating by the ratings agencies following Defendants' efforts to accelerate the Notes; and the triggering of a cross-default in the loan agreements which such cross-default has forced the Company to renegotiate the terms of its agreements with its secured lenders, and necessitated an amendment to those agreements.

95.     Defendants conduct has caused and threatens to cause irreparable harm to Landry's. Further, as a proximate cause of Defendants' improper conduct, the Company has suffered substantial injury and damages. Landry's seeks exemplary damages against US Bank, Post and Lord Abbett for those injuries and damages caused by their fraud, malice, gross negligence, and unlawful conduct.

**F.      Business disparagement.**

96.     Landry's repeats and realleges paragraph 1 through 63 as if fully set forth herein.

97.     Post Advisory Group and others caused the Trustees to issue a Notice of Acceleration with knowledge that such notice as not properly issued.

98.     Knowing that the Landry's would be obligated to disclose the content of the Notice of Acceleration, Defendants purposefully and with malice prevailed upon the Trustee to send the Notice of Acceleration in a bid to cause economic harm to Landry's.

99.     Post Advisory Group further advised the public that it was heading up the unauthorized Ad Hoc Committee. Post Advisory Group's statement aggravated and furthered the damage to Landry's business reputation.

100.    Defendants conduct has caused and threatens to cause irreparable harm to Landry's. Further, as a proximate cause of Defendants' improper conduct, the Company has suffered substantial injury and damages. The Company is entitled to exemplary damages because Defendants acted with gross negligence, malice, and a specific unlawful intent to cause injury to Plaintiff.

**G.**   **Action for business coercion.**

101.   Landry's repeats and realleges paragraph 1 through 63 as if fully set forth herein.

102.   Post Advisory Group and Lord Abbett threatened to (1) take action that they had no legal right to take; (2) the threat was of such a character as to destroy Landry's free agency and compelled it to seek judicial relief and seek arrangements with creditors that will impair Landry's; (3) the threat necessitated the filing of this action seeking judicial relief and protection from creditors which Landry's would not otherwise have done and which Landry's was not legally bound to do; (4) the threat was imminent; and (5) plaintiff had no present means of protection.

103.   Accordingly, Post Advisory Group and Lord Abbett are liable for all damages suffered by Landry's that were proximately caused by their act of business coercion.

104.   Defendants conduct has caused and threatens to cause irreparable harm to Landry's. Further, as a proximate cause of Defendants' improper conduct, the Company has suffered substantial injury and damages. The Company is entitled to exemplary damages because Defendants acted with gross negligence, malice, and a specific intent to cause injury to Plaintiff.

**G.**   **Application for temporary restraining order.**

105.   Landry's repeats and realleges paragraph 1 through 99 as if fully set forth herein.

106.   Landry's asks the Court to enter a temporary restraining order and preliminary injunction prohibiting Defendants from accelerating the Senior Notes. The Company further requests that the Court require that Trustee take no action on the Indenture (other than in the event of a payment default under the Indenture) and that it be further required to contact owners, beneficial holders and the holder of Senior Notes and instruct them not to take action on the

Indenture because the Senior Notes are no longer accelerated. Specifically, Landry's requests that the Court enter an order as follows:

    a.    U.S. Bank is to immediately withdraw the Notice of Acceleration sent by US Bank on our about July 24, 2007 to Landry's Restaurants, Inc. and certain of its Subsidiary Guarantors and notify all known holders of the Senior Notes that the Notice of Acceleration has been withdrawn pursuant to this Court's order;

    b.    All owners, beneficial holders and holders of the Senior Notes, including but not limited to Post Advisory Group, LLC, Lord Abbett Bond-Debenture Fund, Inc., and U.S. Bank, and all those acting in concert with them, are enjoined and restrained from taking any direct or indirect action predicated on the basis that the Senior Notes have been accelerated;

    c.    All owners, beneficial holders and holders of the Senior Notes, including but not limited to Post Advisory Group, LLC, Lord Abbett Bond-Debenture Fund, Inc., and U.S. Bank, and anyone acting in concert with them, are enjoined and restrained from directly or indirectly communicating to any third-party person or entity that (i) the Senior Notes have been accelerated, or (ii) that Plaintiff is not paying its debts as they come due;

    d.    U.S. Banks is to immediately notify all known owners, beneficial holder and holders of the Senior Notes as to the substance of the prohibited activities contained in this Order, and provide each such owner a copy of this Order.

107.    If Plaintiff's application is not granted, it will suffer imminent and irreparable harm before notice and hearing can occur on its request for a temporary injunction; the cost of redeeming the Notes in advance of their contractual due date will saddle the Company with onerous secured credit terms that will dramatically impede the Company's business for the foreseeable future and poses enormous risk to the Company if it is unable to replace such debt when it matures.

108.    Plaintiff has no other adequate remedy at law, as there is no other viable means of preventing Defendant from altering the status quo. Injunctive relief is the only adequate remedy available.

109.   The balance of the equities favors issuance of this temporary restraining order. Defendants will suffer no monetary harm from a wrongful injunction, while Plaintiff's interests will be immediately and irreparably harmed if a temporary restraining order is not entered.

110.   Plaintiff is willing to post a bond as may be required by the Court.

**H.**   **Request for preliminary injunction.**

111.   Landry's repeats and realleges paragraph 1 through 105 as if fully set forth herein.

112.   It is probable that the Company will prevail at trial on its claim asserted herein against Defendants for breach of contract or, in the alternative, tortious interference with business relations, business disparagement, and violation of the Trust Indenture Act.

113.   Plaintiff asks the Court to set its application for temporary injunction for a hearing and, after the hearing, issue a temporary injunction substantially the same as the temporary restraining order requested above.

**I.**   **Request for permanent injunction.**

114.   Landry's repeats and realleges paragraph 1 through 108 as if fully set forth herein.

115.   Landry's asks the Court to set its application for permanent injunction for a full trial on the merits, and, after the trial, issue a permanent injunction against Defendants prohibiting substantially the same as the temporary restraining order requested above.

**J.**   **Request for discovery order.**

116.   Landry's requests that the Trustee provide it with a complete list of all known owners of the Senior Notes immediately.

WHEREFORE, Landry's respectfully requests for the relief set forth herein, the costs and disbursements of this proceeding, together with reasonable attorneys' fees, and such further relief that the Court may consider just and proper.

Dated:  August 15, 2007

Respectfully submitted,

Anthony G. Buzbee
State Bar No. 24001820
Southern District Bar No. 22679
1910 Ice & Cold Storage Building
104 21st Street
Galveston, Texas  77550
Telephone: (409) 762-5393
Telecopier: (409) 762-0538

ATTORNEY-IN-CHARGE FOR
PLAINTIFF, LANDRY'S
RESTAURANTS, INC.

OF COUNSEL:

Thomas E. Kurth
Patricia L. Casey
Odean L. Volker
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 2100
Houston, Texas  77002-5012
Telephone: (713) 547-2000
Telecopier: (713) 547-2600

George W. Vie III
MILLS SHIRLEY L.L.P.
2228 Mechanic Street, Suite 400
Galveston, Texas  77553-1943
Telephone: (409) 763-2341
Telecopier: (409) 763-2879

J. Wiley George
Charles B. Hampton
ANDREWS KURTH LLP
600 Travis Street, Suite 4200
Houston, Texas  77002
Telephone: (713) 220-3938
Telecopier: (713) 220-3943

Miranda S. Schiller
WEIL, GOTSHAL & MANGES
767 Fifth Avenue
New York, New York 10153

ATTORNEYS FOR PLAINTIFF

<u>VERIFICATION</u>

STATE OF TEXAS §
§
COUNTY OF HARRIS §

BEFORE ME, the undersigned notary public, on this day personally appeared Steven L. Scheinthal, the undersigned, who being duly sworn by me, stated under oath:

My name is Steven L. Scheinthal.  I am over the age of 21 and competent to make this affidavit.  I have reviewed the information set forth in Plaintiff Landry's Restaurants, Inc.'s Verified First Amended Complaint, Application For Temporary Restraining Order And Injunctive Relief

The facts contained therein are true and correct and within my personal knowledge.

STEVEN L. SCHEINTHAL

SUBSCRIBED AND SWORN TO BEFORE ME ON THE 15TH DAY OF AUGUST, 2007.

KATHERINE W. ROGERS
Notary Public, State of Texas
My Commission Expires
November 28, 2009

Notary Public in and for the State of Texas

(SEAL)

H-688586_4.DOC                                 26

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via hand delivery and by delivery through the Court's electronic case filing system upon the parties appearing below on this 16th day of August, 2007:

***Counsel for Post Advisory Group and Lord Abbett***:

Kathy D. Patrick
Scott A. Humphries
Brandon T. Allen
Ayesha Najam
Matthew D. Cooper
GIBBS & BRUNS, LLP
1100 Louisiana Street, Suite 5300
Houston, Texas 77002

***Counsel for U.S. Bank National Association:***

Gerard G. Pecht
Layne E. Kruse
Steven L. Roberts
Reagan M. Brown
Edward J. Patterson
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095

Alton C. Todd
THE LAW FIRM OF ALTON C. TODD
312 S. Friendswood Drive
Friendswood, Texas 77546
Via Facsimile: (281) 648-8633

Ira H. Goldman
Julie A. Manning
SHIPMAN & GOODWIN, LLP
One Constitution Plaza
Hartford, Connecticut 06103-1919

***Counsel for David Winn***

Robert W. Coleman, Esq.
Brown McCarroll, L.L.P.
2001 Ross Avenue, Suite 2000
Dallas, Texas 75225

Patricia L. Casey